AUSA: Cameron Molis

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**25 MAG 3823**

UNITED STATES OF AMERICA

v.

HIRAM CARRERO,

Defendant.

<u>**SEALED COMPLAINT**</u>

Violation of 18 U.S.C. § 844(f)

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

JOHN DIMARE, being duly sworn, deposes and says that he is a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and charges as follows:

## COUNT ONE
### (Arson)

1. On or about December 1, 2025, in the Southern District of New York, HIRAM CARRERO, the defendant, maliciously damaged and destroyed, and attempted to damage and destroy, by means of fire and an explosive, a building, vehicle, and other real and personal property, in whole and in part owned and possessed by an institution receiving Federal financial assistance, to wit, CARRERO ignited a fire that caused injury to a person and damaged a subway car owned and possessed by the Metropolitan Transportation Authority ("MTA"), an institution receiving Federal financial assistance, in Manhattan, New York.

(Title 18, United States Code, Section 844(f).)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

2. I am a Task Force Officer with the ATF, currently assigned to the Arson and Explosives Squad, and have been involved in the investigation of this matter. I base this affidavit on my own personal experience investigating crimes involving arsons, as well as on my conversations with other law enforcement agents, and my examination of various reports, recordings, photographs, and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## The Arson

3.   Based on my personal involvement in this investigation, including my conversations with other law enforcement officers as well as my review of reports and video surveillance, I have learned the following about an arson that occurred on an MTA subway train (the "Train") on or about December 1, 2025 (the "MTA Arson"):

    a.   On or about December 1, 2025, at approximately 3:02 a.m., an individual ("Male-1") briefly entered car #1449 of the Train when it was stopped at the 34th Street – Penn Station subway station. Based on my review of surveillance footage from the Train, I have learned that Male-1 looked inside car #1449, before exiting and walking south down the platform toward car #1448 of the Train. Below are still images from that surveillance footage depicting Male-1 (who is circled in red) looking into car #1149 (**Image-1**).


**Image-1**


**Image-1 (enlarged)**

b.     At approximately 3:03 a.m., Male-1 (who is circled in red below) returned to car #1449, gathered a piece of paper from the north side of that car (**Image-2**), and carried the piece of paper toward the south side of that car, where a passenger was sleeping (the "Victim") (**Image-3**). Based on my review of additional surveillance footage of car #1449, I do not believe that any other individuals were present in car #1449 at that time.



**Image-2**



**Image-2 (enlarged)**



**Image-3**



**Image-3 (enlarged)**

3

        c.      After Male-1 had carried the paper toward the Victim, who was sleeping at the time, a fire can be seen ignited (i) in the reflection, circled in red below, in the leftmost vertical passenger handrail (**Image-4**) and (ii) through the door, circled in red below, separating car #1448 and car #1449 (**Image-5**).[1]



**Image-4**



**Image-4 (enlarged)**



**Image-5**



**Image-5 (enlarged)**

---

[1] Based on my participation in this investigation, I have learned that, at the time of the arson, the camera aimed at the south side of car #1449 was not functioning.

d.      Male-1, who is circled in red below, then fled the Train just as the doors were closing and the Train began to depart the station (**Image-6** and **Image-7**).


Image-6


Image-6 (enlarged)


Image-7

5

e. At approximately 3:05 a.m., as the Train traveled north towards the 42nd Street – Times Square subway station, the fire flared up, engulfing the Victim's legs and a portion of the Train car. The flames can be seen (i) in the reflection (circled in red below) in the leftmost vertical passenger handrail (**Image-8**) and (ii) through the door (circled in red below) separating car #1448 and car #1449 (**Image-9**).

 

**Image-8**                                    **Image-8 (enlarged)**

 

**Image-9**                                    **Image-9 (enlarged)**

6

    f.  The Victim, still in flames (**Image-10**), exited car #1449 at the 42nd Street—Times Square subway station, at which point the fire was extinguished by members of law enforcement responding to the scene.



**Image-10**

    g.  As a result of the fire, the Victim suffered severe injuries to his legs and was rushed to the hospital in critical condition.

    h.  As a result of the fire, the seats of car #1449 were burned and damaged. A burned piece of paper was found in the south end of car #1449, in the area where the Victim had been sleeping before Male-1 started the fire, as described above.

  4.  Based on my review of MTA records and publicly available documents, I have learned that the MTA — which operates the New York City subway system — receives Federal financial assistance.

### Identification of HIRAM CARRERO as Male-1

5.      Based on surveillance video from various MTA stations and MTA records, I have learned the following:

       a.      After leaving the Train, Male-1 remained at the 34th Street – Penn Station subway station for approximately 39 minutes before boarding another northbound train at approximately 3:42 a.m.

       b.      At approximately 4:05 a.m., Male-1 exited the northbound train at the 135th Street station in East Harlem, Manhattan.

       c.      At approximately 4:15 a.m., Male-1 boarded a northbound MTA bus, at the intersection of West 135th Street and Malcolm X Boulevard in East Harlem, Manhattan.

       d.      At approximately 4:17 a.m., Male-1 exited the bus at the Malcolm X Boulevard and West 142nd Street bus stop, which is located approximately two-tenths of a mile from a particular apartment building located on West 142nd Street. As described *infra* ¶ 6(a), law enforcement officers later determined that HIRAM CARRERO, the defendant, resides in an apartment in that building (the "Residence").

6.      Based on my personal involvement in this investigation, my conversations with other law enforcement officers, and my review of New York City Police Department ("NYPD") and other reports, I have learned the following:

       a.      On or about October 21, 2025, at approximately 7:20 p.m., HIRAM CARRERO, the defendant, was cited by the NYPD for failing to stop his bicycle at a red light in violation of New York Vehicle and Traffic Law Section 111(d)(1)(c). During the stop, CARRERO provided his name and identified the Residence as his address. The interaction with CARRERO was captured on NYPD body-worn camera and still images from that interaction are depicted below.

       b.      I have compared photographs of Male-1 involved in the MTA Arson (**Image-3 (enlarged)** (*see supra* ¶ 3(b)) and **Image-7 (enlarged)** (*see supra* ¶ 3(d))) with the below photographs of CARRERO from the October 21, 2025 stop (**Image-11, 12, and 13**), and believe that the two individuals have the same distinctive mustache, wore the same hat with white lettering across the front (indicated by the green arrow below), wore the same backpack with a reflective mark on the left strap (indicated by the purple square below), and wore the same gray hooded sweatshirt with black draw strings.



**Image-11**     **Image-3 (enlarged)**     **Image-12**



**Image-7 (enlarged)**     **Image-13**

7.      Based on my review of the MTA surveillance footage (*see supra* ¶ 3) and based on my comparison of photographs from the surveillance footage captured by body-worn camera (*see supra* ¶ 6), I believe that Male-1, who committed the arson on or about December 1, 2025, is HIRAM CARRERO, the defendant.

8.      Based on my participation in this investigation, I know that, on or about December 4, 2025, law enforcement officers went to the Residence and knocked on the door of Residence. CARRERO exited the Residence, and law enforcement officers made a probable cause arrest of CARRERO for his involvement in the arson described above.

WHEREFORE, I respectfully request that HIRAM CARRERO, the defendant, be imprisoned or bailed, as the case may be.

S/ by the Court with permission
_____
JOHN DIMARE
TASK FORCE OFFICER
BUREAU OF ALCOHOL, TOBACCO, FIREARMS
AND EXPLOSIVES

Sworn to me through the transmission of
this Complaint by reliable electronic
means (telephone), pursuant to Federal Rule
of Criminal Procedure 4.1,
this 5th day of December, 2025

_____
THE HONORABLE ROBERT W. LEHRBURGER
United States Magistrate Judge
Southern District of New York